UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR # AH1995,<br><br>Plaintiff,<br><br>v.<br><br><br>A. CALDERON, MISS MORENO,<br><br>Defendants. | Case No.: 22-CV-441 TWR (BLM)<br><br>**ORDER (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS* AND (2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)**<br><br>(ECF No. 2) |

On April 4, 2022, Plaintiff Raul Arellano, currently incarcerated at Robert J. Donovan State Prison ("RJD") and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

/ / /

/ / /

1

I.      **Motion to Proceed IFP**

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

---

[1]   In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

In support of his motion to proceed IFP, Plaintiff submitted a Prison Certificate signed by a RJD Accounting Officer attesting to his monthly balances and deposits and an Inmate Trust Account report. *See* ECF No. 5; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The certificate shows Plaintiff had an average monthly deposit of $51.67 to his account, maintained an average balance of $120.99 in his account over the six-month period preceding the filing of his current Complaint, and an available balance of $0.00 as of April 4, 2022. *See* ECF No. 3 at 1–4 ; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), and declines to exact any initial filing fee because his trust account statement shows he now "has no means to pay it." *Bruce*, 577 U.S. 84–85. The Court **DIRECTS** the Secretary of the CDCR to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id*.

## II. Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Arellano is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous

1 | or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d
2 | 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**B.   Plaintiff's Allegations**

Arellano states that on or about March 24, 2018, he was feeling suicidal and was sent to a "crisis bed." ("Compl.," ECF No. 1 at 3.) Defendant Moreno was assigned to him as his clinician. (*Id.*) Arellano claims that on or about April 1 to 3, 2022, Moreno told

him she was removing him from suicidal care and sending him back to AdSeg, which Arellano refers to as "the hole," despite the fact that he told Moreno he was "still having thoughts of hurting and killing [himself]." (*Id.*) Arrellano alleges that Moreno told him she "didn't care," and that she needed to make room for more inmates because inmates were only to stay in crisis care for two weeks at which point they would be returned to general population. (*Id.*) When Arellano refused to leave his crisis bed on April 4, 2018, he was "drag[ged] . . . out naked in front of all medical staff and [taken] to the hole." (*Id.*)

On April 6, 2018, Arellano alleges he attempted suicide by throwing himself head-first off the top bunk and onto the concrete floor. (*Id.*) He was transferred back to a crisis bed where he began to suffer a loss of eyesight and pain in his head and spinal cord. (*Id.*) Defendant Calderon was assigned to Arellano as his psychologist. (*Id.* at 4.) According to Arellano, on or about April 15 to 18, 2018, Calderon "tried to convince [him] to admit I felt safe to go back to the yard with other inmates without attempting to hurt [himself]." (*Id.*) Arellano states he told Calderon that if he sent him back to the yard he would attempt suicide again and that he had many reasons to do so, including the attempted suicide of his eleven-year-old child, the death of his brother-in-law, and his innocence. (*Id.*)

On April 19, 2018, at about 1:00 a.m., Arellano claims he sliced his wrist with small pieces of paper and plastic which was treated by medical staff. (*Id.*) Later that same day, Arellano alleges Calderon told him he was going to be returned the yard despite Arellano telling him he was still suicidal and would attempt to kill himself if returned. (*Id.* at 4–5.) When Calderon would not relent, Arellano claims he asked to be put in the mental health (EOP) yard so he would not have access to items he could use to kill himself. (*Id.* at 5.) Calderon allegedly refused to do so and told Arellano that he did not care what happened to him. (*Id.*) According to Arellano, on the first or second night he was in his regular cell, he sliced his wrist with a razor blade and "must have bled a whole liter." (*Id.*) Arellano's cellmate helped to stop the bleeding but did not tell any correctional officers about the incident. (*Id.*)

/ / /

## C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## D. Analysis

Arellano alleges his Eighth Amendment to be free from cruel and unusual punishment was violated when Defendants failed to provide him with proper mental health care by removing him from a "crisis bed" despite his assertions that he was going to kill himself and refusing to provide him with mental healthcare. (Compl. at 4–6.) The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which

prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Rather, "[t]o 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)). "[A] purposeful act or failure to respond to a prisoner's pain or possible medical need," which causes harm is sufficient to establish deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104) *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997; *Jett*, 439 F.3d at 1096; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citing *Farmer*, 511 U.S. at 837; *Kamakeeaina v. City & Cty. of Honolulu*, No. 11-cv-00770 JMS, 2014 WL 1691611, at *7 (D. Haw. Apr. 29, 2014), *affirmed sub nom. Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding statements that plaintiff was "ready to commit suicide" were sufficient to show serious medical need).)

Arellano alleges that after being placed in a crisis bed due to his suicidal thoughts, defendant Moreno had him removed from suicidal care despite the fact that he told Moreno he was "still having thoughts of hurting and killing [himself]." (Compl. at 3.) Arellano further claims that Moreno told him she "didn't care" that he continued to have suicidal thoughts. (*Id.*) Arellano allegedly attempted suicide after Moreno had him transferred back to general population by throwing himself head-first off the top bunk in his cell and onto the concrete floor. (*Id.*) He suffered pain and problems with his eyesight as a result. (*Id.*) These allegations are sufficient to plausibly state an Eighth Amendment claim against Moreno. *Iqbal*, 556 U.S. at 678; *McGuckin*, 974 F.2d at 1059; *Kamakeeaina*, 2014 WL 1691611, at *7.

After Arellano's suicide attempt, he was transferred back to a crisis bed. (Compl. at 4.) While there, Arellano claims he made cuts to his wrist which the medical staff treated. (*Id.*) According to Arellano, the next day Calderon told him he was going to send him back to the yard. (*Id.*) Arellano alleges he told Calderon he was still suicidal and asked to be placed in a mental health program so he would be prevented from hurting himself. (*Id.* at 4–5.) Calderon refused to do so and allegedly told Arellano he did not care what happened to him. (*Id.* at 5.) On the first or second night he was in his regular cell, Arellano claims he sliced his wrist with a razor blade and "must have bled a whole liter" into the toilet. (*Id.*) Arellano's cellmate helped to stop the bleeding but did not tell any correctional officers about the incident. These allegations are sufficient to plausibly state an Eighth Amendment claim against Calderon as well. *Iqbal*, 556 U.S. at 678; *McGuckin*, 974 F.2d at 1059; *Kamakeeaina*, 2014 WL 1691611, at *7.

### III.  Conclusion and Order

In light of the foregoing, the Court:

1)  **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2)  **DIRECTS** the Secretary of the CDCR, or their designee, to collect from Arellano's trust account the $350 filing fee owed in this case by garnishing monthly

payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4) **DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant.  In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve them upon Defendants.

5) Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include an address where each named Defendant may be found and/or is subject to service, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

6) **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendants as directed by Plaintiff on the USM Form 285s provided to him and to promptly file proof of service, or proof of any attempt at service left unexecuted with the Clerk of the Court.  All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7) **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a).  *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has

made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

8) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

**IT IS SO ORDERED.**

Dated: August 11, 2022

_____
Honorable Todd W. Robinson
United States District Judge